**Filed: March 7, 2013**

IN THE SUPREME COURT OF THE STATE OF OREGON


CRYSTAL COMMUNICATIONS, INC.,
an Oregon corporation; C. G. MCKEEVER;
MYRA MCKEEVER; JAMES E. BRYANT;
CAMELLA L. RYAN; TERRY PINNA;
and ERICA PINNA,

Appellants,

v.

DEPARTMENT OF REVENUE,
State of Oregon,

Respondent.

(TC 4769; SC S059271)

En Banc

On appeal from the Oregon Tax Court.

Henry C. Breithaupt, Judge.

Argued and submitted September 18, 2012; resubmitted January 7, 2013.

Scott G. Seidman, Tonkon Torp LLP, Portland, argued the cause and filed the briefs for appellants. With him on the brief were Mark F. LeRoux and Michael J. Millender.

Darren Weirnick, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. With him on the brief was John R. Kroger, Attorney General.

KISTLER, J.

The judgment of the Tax Court is affirmed.

KISTLER, J.

The primary question in this case is whether the Oregon Department of Revenue (the department) properly classified income resulting from the sale of Crystal Communication's assets as "business income."  Crystal operated as a multistate business providing wireless cellular telecommunications services and, in the relevant tax years, sold its assets related to those services.[1]  It reported the gain from the asset sale as "nonbusiness income" and allocated that gain to Florida, its state of commercial domicile.  *See* OAR 150-314.280-(D).  On audit, the department reclassified the gain as apportionable "business income."  *See* OAR 150-314.280-(B); OAR 150-314.610(1)-(B)(2).  Crystal challenged the reclassification, and the Tax Court granted summary judgment in favor of the department and entered judgment accordingly.  Crystal has appealed to this court.  We now affirm the Tax Court's judgment.

Before turning to the relevant facts, we discuss briefly the statutory and regulatory context in which this case arises.  Under Oregon tax law, two separate statutory mechanisms exist for the purpose of allocating income earned by multistate businesses.  The first is codified at ORS 314.280 and applies only to financial organizations and public utilities.  *See* ORS 314.280(1).  The second, the Uniform Division of Income for Tax Purposes Act (UDITPA), is codified at ORS 314.605 to 314.675 and applies generally to all other businesses, subject to a third exclusion not

---

[1]     The tax years at issue are 1999 and 2000.  Thus, the statutes and regulations referred to in this opinion are the 1999 Oregon Revised Statutes and the 1999 Oregon Administrative Rules, unless otherwise noted.

relevant here. Crystal is a public utility and is therefore governed by ORS 314.280.[2]

That statute provides,

> "If a taxpayer has income from business activity as a financial organization or as a public utility (as defined respectively [under UDITPA]) which is taxable both within and without this state (as defined in ORS 314.610(8) and 314.615), the determination of net income shall be based upon the business activity within the state, and the Department of Revenue shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the department, so as fairly and accurately to reflect the net income of the business done within the state."

ORS 314.280(1).

ORS 314.280 governs the allocation of income earned by financial organizations and public utilities engaged in business activities "both within and without this state." It gives the department discretion to apply either of two methods of allocation -- segregation or apportionment -- to "income from business activity" earned by those entities, as long as the method it chooses "fairly and accurately [reflects] the net income of the business done within the state." ORS 314.280(1). Under the segregated method of allocation, business entities that are connected by common ownership but that exist independently and in different states -- *i.e.*, nonunitary businesses -- may report and pay

---

[2] The terms "financial organization" and "public utility" are defined by ORS 314.610. That statute defines "public utility" as

> "any business entity whose principal business is ownership and operation for public use of any plant, equipment, property, franchise, or license for the transmission of communications, transportation of goods or persons, or the production, storage, transmission, sale, delivery, or furnishing of electricity, water, steam, oil, oil products or gas."

ORS 314.610(6). Crystal does not dispute that it is a "public utility" under state law.

2

separate taxes on the individual incomes earned by each entity. *See Fisher Broadcasting, Inc. v. Dept. of Rev.*, 321 Or 341, 348, 354, 898 P2d 1333 (1995). That method treats the business entity or entities within the state as separate and distinct from the business entities outside the state. *Coca Cola Co. v. Dept. of Rev.*, 271 Or 517, 521 n 1, 533 P2d 788 (1975).

The apportionment method of allocation, on the other hand, generally has been understood to apply to unitary businesses -- that is, to businesses in which a "portion of the business done within the state is dependent upon or contributes to the operation of the business without the state[.]" *Id.* at 524 (internal quotation marks omitted); *see also Allied-Signal, Inc. v. Div. of Taxation*, 504 US 768, 778, 112 S Ct 2251, 119 L Ed 2d 533 (1992) (discussing the unitary business principle and acknowledging that the apportionment method derives from that principle). Under that method, if an entity's business conducted in a particular state depends upon or contributes to its business outside that state, the state may tax a portion of the entity's total net income. Generally, the state tax law mechanism for apportioning income involves a three-factor formula by which the state calculates the ratio of the taxpayer's property, payroll, and sales within that state to its total property, payroll, and sales. *See* Jerome R. Hellerstein & Walter Hellerstein, *State Taxation* ¶ 9.02, 9-16 (3d ed 2000 & Supp 2013). The income apportioned to the state is calculated by multiplying that ratio by the taxpayer's total net income. *Id.* ¶ 9.02 at 9-17.

ORS 314.280 does not specify a formula for apportionment, nor does it establish a method for allocating "income from business activity" earned by the entities

3

that it governs. The department has promulgated rules to provide further guidance.

Those rules largely incorporate by reference the methods of apportioning business income established under UDITPA. Specifically, one of those rules provides,

> "The provisions of ORS 314.650 [for apportioning business income] apply to all tax returns of financial organizations and public utilities for all tax years beginning on or after January 1, 1991."

OAR 150-314.280-(A)(2). Another rule provides,

> "The definitions of 'business income,' 'commercial domicile,' 'compensation,' 'financial organization,' 'nonbusiness income,' 'public utility,' 'sales,' and 'state' *contained [in UDITPA] and the related rules* are by this reference incorporated herein[.]"

OAR 150-314.280-(B) (emphasis added).

The issue in this case arises because OAR 150-314.280-(B) incorporates by reference two potentially conflicting definitions of business income from UDITPA and makes those definitions applicable to utilities and financial organizations, which are taxed under ORS 314.280. To put the issue in context, we discuss UDITPA briefly. Under UDITPA, whether income is allocated to a single state or apportioned among several depends on whether that income is classified under the statute as "business income" or "nonbusiness income." *See* Hellerstein & Hellerstein, *State Taxation* ¶ 9.05[1][a] at 9-36. When a multistate business subject to UDITPA earns "business income," that income is apportioned among the several states in which the taxpayer conducts business.[3] "Nonbusiness income" earned by a multistate business subject to UDITPA is allocated to

---

[3] Consistently with the general practice, UDITPA provides a three-factor formula for apportioning the entity's net business income based on the business's payroll, property, and sales. *See* ORS 314.650.

4

a designated state, generally the taxpayer's commercial domicile or, if the nonbusiness income derives from property, the property's situs. *See* ORS 314.625 - 314.645.

The terms "business income" and "nonbusiness income" are defined terms under UDITPA:

> " 'Business income' means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, the management, use or rental, and the disposition of the property constitute integral parts of the taxpayer's regular trade or business operations."

ORS 314.610(1). "Nonbusiness income" is "all income other than business income." ORS 314.610(5). This court previously has explained that each of the two verb phrases within the statutory definition of "business income" reflects a separate test defining business income in terms of the source from which the income derives. *Willamette Industries, Inc. v. Dept. of Rev.*, 331 Or 311, 316, 15 P3d 18 (2000). The first verb phrase defines what has been referred to as the "transactional test." Under that test, business income "means income arising from transactions and activity in the regular course of the taxpayer's trade or business[.]" ORS 314.610(1). The second verb phrase defines what has been referred to as the "functional test." Under that test, business income "includes income from tangible and intangible property if the acquisition, the management, use or rental, and the disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." *Id.*

The department has promulgated a rule that further defines what constitutes "business income" for the purposes of UDITPA. *See* OAR 150-314.610(1)-(B). Under that rule, "business income" includes "[g]ain or loss from the sale, exchange or other

5

disposition of real or tangible or intangible personal property * * * if the property while owned by the taxpayer was used in the taxpayer's trade or business." OAR 150-314.610(1)-(B)(2). Crystal refers to this rule as "the Business Income Rule," and so do we.

As noted, the department has promulgated rules to implement ORS 314.280 (the statute governing taxation of utilities and financial institutions) that adopt, practically wholesale, UDITPA's statutory provisions and related rules. As pertinent to this case, OAR 150-314.280-(B) provides that two definitions of "business income" drawn from UDITPA apply under ORS 314.280. One is the statutory definition of business income found in ORS 314.610(1). The other is the definition of business income found in the Business Income Rule, OAR 150-314.610(1)-(B)(2). The issue in this case arises because Crystal contends that the definition of "business income" found in the Business Income Rule reaches more broadly than the statutory definition of that term. Specifically, Crystal does not dispute that the gain that it realized from the sale of its assets is "business income" subject to allocation under the Business Income Rule, but it argues that the gain is not "business income" within the meaning of the statutory definition of that term in UDITPA, and thus is not subject to allocation under ORS 314.280.

With that statutory and regulatory background in mind, we turn to the facts of this case, which we take from the stipulated record. Crystal Communications is an Oregon entity that was organized as an S corporation under the Internal Revenue Code during the relevant tax years. Taxpayers McKeever, Bryant, Ryan, and Pinna (the individual taxpayers) are shareholders of Crystal and nonresidents of Oregon. Until

6

1999, Crystal held a license from the Federal Communications Commission (the FCC license) to operate wireless telecommunications services in a designated service area in Oregon. That area was known as Oregon #1 Rural Service Area and included Columbia, Clatsop, Tillamook, and Yamhill counties.

Between 1990 and 1999, Crystal contracted with McCaw Cellular Communications, Inc., and AT&T to construct and operate cellular telecommunications sites throughout Crystal's four-county service area. Over that time period, Crystal also contracted with AT&T to outfit certain of the cellular sites with retail outlets and service centers and entered into license agreements with Cellular One to promote Crystal's cellular telecommunications services. The purpose of Crystal's outfitting its system with retail outlets and service centers was to enhance the value of the system for ultimate sale.

In June 1999, with FCC approval, Crystal agreed to sell its assets to AT&T for $51.5 million. Of that amount, approximately $47.8 million was allocated to various intangibles (including the FCC license), and the balance was allocated to other assets (including cell towers and equipment). The sale proceeds were distributed to Crystal's shareholders, and Crystal ceased operations. In 2000, the corporation filed an Oregon excise tax return in which it classified the gain on the sale of the FCC license as "nonbusiness income" allocable to Florida. The individual taxpayers also filed Oregon income tax returns for that year.

Crystal was later audited by the department. The auditor issued a report that, among other adjustments, reclassified the gain on the sale of the FCC license as apportionable business income. Based on that report, the department issued notices of

7

deficiency to the individual taxpayers. A conference officer subsequently upheld the auditor's adjustment, and in 2004, the individual taxpayers and Crystal (collectively Crystal) appealed the department's conference decision to the Magistrate Division of the Tax Court, which also upheld the treatment of the gain as apportionable business income. In 2006, Crystal appealed to the Regular Division of the Tax Court.

In the Tax Court, Crystal and the department filed cross-motions for summary judgment. In the Tax Court and this court, the parties' primary arguments have proceeded from two separate premises. Crystal has argued that the gain from the sale of the FCC license is not "business income" under ORS 314.610(1), which defines that term for the purposes of UDITPA. On that issue, Crystal has argued (and the department has not disputed) that the gain does not qualify as "business income" under the transactional test. Crystal also has argued that the gain is not business income under the functional test, as defined in ORS 314.610(1).[4] Specifically, Crystal notes that income from tangible and intangible property will qualify as business income under the functional test only "if the acquisition, the management, use or rental, and the disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." *See* ORS 314.610(1) (stating that condition for business income under the functional test).

On that point, Crystal reasons that the legislature's use of the word "and" in

---

[4] On appeal, Crystal recognizes that, even though some gains may qualify as business income under both tests, the functional test captures gains that the transactional test does not. *See Willamette Industries, Inc.*, 331 Or at 316 (recognizing that the two tests do not always capture the same income). We note that some courts and scholars have construed UDITPA's text differently. *See* Hellerstein & Hellerstein, *State Taxation* ¶ 9.05[2][e] at 9-72 - 9-74 (discussing states' differing resolution of that issue).

the functional test means that (1) the acquisition; (2) the management, use, or rental; and (3) the disposition of the property all must constitute "integral parts of the taxpayer's regular trade or business operations." Crystal further contends that, when the disposition of property occurs as part of the liquidation of a business, the disposition is not an "integral par[t] of the taxpayer's *regular * * * business operations." *See* ORS 310.610(1) (emphasis added). Crystal thus reads a "liquidation exception" into the functional test. Applied to this case, Crystal's interpretation of the functional test means that, when Crystal sold its assets to AT&T and liquidated its business, none of the gain realized from the sale was "business income" within the meaning of UDITPA and thus was not apportionable to Oregon.

Crystal does not dispute that the gain from the sale of the FCC license qualifies as "business income" under the Business Income Rule, the rule that the department promulgated to implement UDITPA. *See* OAR 150-314.610(1)-(B)(2). However, it argues that, to the extent that the Business Income Rule reaches further than the statutory definition of "business income" in UDITPA, the rule is invalid under UDITPA. Crystal recognizes, as it must, that the question in this case is not whether the gain from the sale of its assets constitutes "business income" under UDITPA. Rather, because Crystal is a public utility subject to taxation under ORS 314.280, and not UDITPA, the question under ORS 314.280 is whether the gain constitutes "income from business activity," which may be apportioned among the various states in which the taxpayer engaged in business. Crystal points out, however, that the department has promulgated a rule -- OAR 150-314.280-(B) -- that makes both the statutory definition of

9

business income found in UDITPA and the definition of business income found in the Business Income Rule applicable under ORS 314.280. In Crystal's view, the result of OAR 150-314.280-(B) is that two conflicting definitions of "business income" apply to public utilities under ORS 314.280.

Crystal resolves that conflict by interpreting OAR 150-314.280-(B) to incorporate by reference only the "UDITPA definitions and related rules validly enacted and in force under UDITPA." In Crystal's view, because the Business Income Rule was not validly enacted, the only valid definition of business income that OAR 150-314.280-(B) makes applicable to utilities is the statutory definition from UDITPA. To interpret OAR 150-314.280-(B) differently, Crystal argues, would be to give effect to the Business Income Rule at the expense of UDITPA's statutory definition of business income. Moreover, Crystal contends, apportioning income of businesses subject to UDITPA differently from income of businesses subject to ORS 314.280 would violate the Uniformity Clause of the Oregon Constitution. *See* Or Const, Art I, § 32.

The department, for its part, primarily takes issue with the premise of Crystal's argument; that is, the department argues that there is no "liquidation exception" to the functional test for "business income," as that phrase is defined in UDITPA. In support of that argument, the department urges us to interpret the functional test defined in UDITPA the same way that the California Supreme Court did in *Hoechst Celanese Corp. v. Franchise Tax Board*, 25 Cal 4th 508, 22 P3d 324, *cert den*, 534 US 1040

10

(2001).[5] Following *Hoechst*'s reasoning, the department contends that what matters under the functional test is the business's power to dispose of an asset that was, until its disposition, an integral part of the business's regular operations. The department contends that, if the statutory definition is interpreted that way, then the Business Income Rule is not broader than the functional test, as defined in UDITPA, and the premise of Crystal's argument fails.

Alternatively, the department argues that, even if the Business Income Rule is broader than the definition of "business income" in UDITPA, the Business Income Rule is still valid under ORS 314.280. The department reasons that it understood that the Business Income Rule would be valid in its entirety when it promulgated OAR 150-314.280-(B) and accordingly made both the Business Income Rule and the statutory definition of business income applicable to public utilities under ORS 314.280. The department reasons that, because its construction of its own rule, OAR 150-314.280-(B), is reasonable, we should defer to it. It also observes that nothing in the Business Income Rule is inconsistent with the text of ORS 314.280.[6]

---

[5] The department argues that California's interpretation of its statute is persuasive because UDITPA is a uniform law developed by the National Conference of Commissioners on Uniform State Laws. Of the 45 states that have a corporate income tax, at least 17 have adopted UDITPA while others have adopted a modified version of UDITPA. Hellerstein & Hellerstein, *State Taxation* ¶ 9.01 at 9-12. California adopted UDITPA in 1967. Oregon adopted a modified version of UDITPA in 1965, but the modifications under Oregon's version do not affect the outcome of this case.

[6] The Tax Court concluded that the Business Income Rule, which OAR 150-314.280-(B) incorporates by reference, is valid in its entirety under ORS 314.280. The Tax Court reasoned initially that the validity of the Business Income Rule, as applied by OAR 150-314.280-(B) to businesses subject to ORS 314.280, must be measured against

11

On appeal, the parties reiterate the arguments described above. We conclude that we need not decide whether the premise of Crystal's argument is correct to resolve this case; that is, we need not decide whether the Business Income Rule is broader than the statutory definition of "business income" in UDITPA and thus invalid under that statute. Even if it is, this case presents a different question. The question in this case is what OAR 150-314.280-(B), the rule promulgated to implement ORS 314.280, means. More specifically, the department has interpreted the two definitions of business income in OAR 150-314.280-(B) consistently with each other, and it argues that its interpretation of its own rule is a reasonable one to which we should defer. In evaluating the department's argument, the initial question is whether the two definitions of business income reasonably can be read together, as the department has done, in a way that gives effect to both. If they can, then the remaining question is whether OAR 150-314.280-(B), so interpreted, is consistent with the terms of ORS 314.280, the statute that that rule was intended to implement. We turn to the first question.

As a general rule, we construe a statute in a manner that gives effect, if possible, to all its provisions. *See* ORS 174.010 ("[W]here there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."); *Northwest Natural Gas Co. v. Dept. of Rev.*, 347 Or 536, 556, 226 P3d 28 (2010) (same). That principle applies by analogy to the construction of an agency's administrative rules

---

the text of ORS 314.280, not the text of UDITPA. Alternatively, the Tax Court reasoned that the Business Income Rule is consistent with the functional test for "business income," as that phrase is defined in UDITPA.

when those rules deal with the same subject. *City of Klamath Falls v. Environ. Quality Comm.*, 318 Or 532, 543, 870 P2d 825 (1994) (citing *Columbia Steel Castings Co. v. City of Portland*, 314 Or 424, 430, 840 P2d 71 (1992)). Additionally, when an agency interprets its own rules, this court defers to the agency's interpretation as long as its interpretation is a plausible one and not inconsistent with the rule, its context, or any other source of law. *Coffey v. Board of Geologist Examiners*, 348 Or 494, 509, 235 P3d 678 (2010).

One plausible way to read the two definitions of business income in OAR 150-314.280-(B) together,[7] as the department does, is informed by the opinion of the California Supreme Court in *Hoechst*. In *Hoechst*, the California Supreme Court first decided that the definition of "business income" under UDITPA consists of two tests: the transactional test and the functional test. *See* 25 Cal 4th at 526. Under the functional test, according to that court, the taxpayer's "acquisition, management, and disposition of

---

[7] As discussed above, OAR 150-314.280-(B) incorporates two definitions of business income. One is the definition found in UDITPA:

> " 'Business income' means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, the management, use or rental, and the disposition of the property constitute integral parts of the taxpayer's regular trade or business operations."

ORS 314.610(1). The other is the definition found in the Business Income Rule, which the department promulgated to implement ORS 314.610(1):

> "Gain or loss from the sale, exchange or other disposition of real or tangible or intangible personal property constitutes business income if the property while owned by the taxpayer was used in the taxpayer's trade or business."

OAR 150-314.610(1)-(B)(2).

13

the property" is based not only on the taxpayer's *actual* acquisition, management, and disposition of property, but also on the taxpayer's *power to control* the acquisition, management, and disposition of that property. *See id.* at 528-29 (citing dictionary definitions of those terms). As we understand the California Supreme Court's reasoning, it concluded that, read together, the terms "acquisition," "management," and "disposition" describe a business's use of property. *Id.* at 529 (quoting a comment to UDITPA "that '[i]ncome from the disposition of property' is business income if the property is '*used* in a trade or business of the taxpayer' " (emphasis and modification added by the California Supreme Court)).

The court also contrasted the use of the word "regular" in the transactional and functional tests. The court reasoned that the transactional test requires proof that the transactions or activity giving rise to the income occur "in the regular course of the taxpayer's trade or business." *Id.* at 530. The court reasoned that, by contrast, in "the functional test -- which focuses on the income-producing property -- 'regular' modifies 'trade or business operations' and follows the phrase 'an integral part of.' " *Id.* The court concluded:

> "Consequently, 'regular,' as used in the functional test, does not refer to the nature of the transaction, and the extraordinary nature or infrequency of the income-producing transaction is irrelevant."

*Id.* In addition to requiring that the property that produces the income be used in the regular course of the business's operations, the functional test, according to the California Supreme Court, also requires that the property be an "integral" part of the business. *Id.*; *see also id.* at 531-32 (defining when property used in a business will be an "integral

14

part" of the regular business operations).[8]

We conclude that the decision in *Hoechst* is a plausible interpretation of the statutory definition of the functional test in UDITPA. We note that the California Supreme Court did not decide in *Hoechst* whether there is a liquidation exception to the functional test. However, its reasoning is inconsistent with recognizing a liquidation exception. *See Jim Beam Brands Co. v. Franchise Tax Board*, 133 Cal App 4th 514, 525-26, 34 Cal Rptr 874 (1st Dist 2005) (so holding); Hellerstein & Hellerstein, *State Taxation* ¶ 9.05[2][c] at 9-69 - 9-70 (agreeing with *Hoechst*'s interpretation of the functional test and reasoning that *Hoechst*'s interpretation of the functional test is inconsistent with a liquidation exception). Although that conclusion is not uniform, *see* Hellerstein & Hellerstein, *State Taxation* ¶ 9.05[2][c] at 9-69 - 9-70, we cannot say that it is unreasonable.

By interpreting the UDITPA definition of business income included in OAR 150-314.280-(B) consistently with *Hoechst*, the department reasonably gave effect to both definitions of business income included in that rule. So construed, both definitions of business income included in OAR 150-314.280-(B) are broad enough to reach the gain from the sale of Crystal's FCC license.[9] In holding that the department's interpretation of its own rule is reasonable, we need not and do not decide whether ORS

---

[8] In reaching that conclusion, the California Supreme Court noted that the definition of "business income" in UDITPA derived from California decisional law, and it relied on those decisions. *See Hoechst*, 25 Cal 4th at 531-32.

[9] There is no dispute that the FCC license was integral to Crystal's business operations.

15

314.610(1), the statute that defines "business income" for the purposes of UDITPA, includes gain realized from the sale of an asset during the course of liquidating a business. The question before us is not what ORS 314.610(1) means in a case arising under UDITPA. Rather, the question before us is whether, in a case arising ORS 314.280, the department reasonably interpreted the two definitions of "business income" in OAR 150-314.280-(B) in a way that gives effect to both. Our decision is limited to the latter question.

As noted, Crystal raises two objections to that interpretation of OAR 150-314.280-(B). First, it contends that that interpretation of the rule does not give full effect to the definition of business income set out in UDITPA. However, Crystal's reading of the rule does not give full effect to the Business Income Rule, which OAR 150-314.280-(B) also incorporates. As between the two readings, the department's reading gives greater effect to both definitions than Crystal's does. Second, Crystal argues that, if the department's interpretation of OAR 150-314.280-(B) is correct, then the functional test will apply differently depending on whether a business is subject to ORS 314.280 or UDITPA and, in doing so, violate the Uniformity Clause of the Oregon Constitution. Crystal contends that we should interpret OAR 150-314.280-(B) to avoid that result.

In some respects, Crystal's constitutional argument is premature. We have not yet determined whether, for businesses subject to UDITPA, the functional test does or does not reach income realized during the course of liquidating a business. Until we decide that issue, we have no occasion to decide whether any difference in treatment would run afoul of the Uniformity Clause of the Oregon Constitution. Beyond that, the

court has recognized that government "may lay an excise on the operations of a particular kind of business, and exempt some other kind of business closely akin thereto." *See Garbade and Boynton v. City of Portland*, 188 Or 158, 192, 214 P2d 1000 (1950) (upholding ordinances taxing different types of businesses differently) (internal quotation marks omitted), *overruled on other grounds by Multnomah County v. Mittleman*, 275 Or 545, 556-57, 552 P2d 242 (1976). In our view, the prospect that taxing utilities and financial institutions differently from other types of businesses would violate the Uniformity Clauses is remote. Without more persuasive authority, we cannot say that the interest in avoiding an unconstitutional construction of OAR 150-314.280-(B) requires us to interpret that rule differently than we have.[10]

Having reached that conclusion, we turn to the question whether our interpretation of OAR 150-314.280-(B) is consistent with the text of ORS 314.280. We conclude that it is. ORS 314.280 grants the department authority either to segregate or to apportion "income from business activity" earned by multistate public utilities as long as its method "fairly and accurately [reflects] the net income of the business done within the

---

[10] Crystal relies on a statement from *Jarvill v. City of Eugene*, 289 Or 157, 613 P2d 1, *cert den*, 449 US 1013 (1980), to support its constitutional argument. It notes that *Jarvill* states that "a tax classification is constitutionally valid if it rests upon genuine differences." *See id.* at 180 (so stating). The issue in *Jarvill*, however, concerned the government's ability to draw tax classifications based on geographical distinctions within the taxing authority. Both linguistically and historically, such tax classifications have been more difficult to justify. *See* Or Const, Art I, § 32 (providing that "all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax"); *United States v. Ptasynski*, 462 US 74, 80-81, 84, 103 S Ct 2239, 76 L Ed 2d 427 (1983) (discussing the purposes and limitations of the similarly worded federal Uniformity Clause). In our view, *Jarvill* does little to advance Crystal's constitutional argument.

state." As explained earlier, the dichotomy that ORS 314.280 establishes, by permitting the department to apply either segregation or apportionment, is the dichotomy between unitary and nonunitary businesses, not that between business and nonbusiness income established under UDITPA. Thus, the wording of ORS 314.280 is broad enough to reach the department's reading of OAR 150-314.280-(B), which, as we also explained, would allow the department to apportion income derived from property used in Crystal's unitary business. Nothing in the wording of ORS 314.280 precludes the apportionment of gain from assets sold in the course of liquidation. The Tax Court correctly granted summary judgment in favor of the department.

The judgment of the Tax Court is affirmed.