No. 25 April 21, 2016 147

IN THE SUPREME COURT OF THE
STATE OF OREGON

Jennifer J. BAKER,
Personal Representative of
the Estate of Tyler R. Baker,
*Respondent on Review,*

*v.*

Matthew A. CROSLIN,
*Petitioner on Review,*
*and*

Tyler Gregory SMITH,
*Defendant.*

(CC 1106-07278; CA A151932; SC S062571)

On review from the Court of Appeals.*

Argued and submitted March 13, 2015.

James L. Hiller, Hitt Hiller Monfils Williams LLP, Portland, argued the cause and filed the brief for petitioner on review.

Jan K. Kitchel, Cable Huston, LLP, Portland, argued the cause and filed the brief for respondent on review. With him on the brief was Casey M. Nokes.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, Brewer, and Nakamoto, Justices.**

LANDAU, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

\* Appeal from Multnomah County Circuit Court. Eric L. Dahlin, Judge pro tempore. 264 Or App 196, 330 P3d 698 (2014).

\*\* Linder, J., retired December 31, 2015, and did not participate in the decision of this case.

**LANDAU, J.**

The issue in this case concerns the extent to which a social host of a gathering at which alcohol is consumed is liable for injuries that occur during the party. The defendant hosted a party at which his guests drank alcohol. Two of the guests engaged in horseplay with loaded handguns, and one of the guests was killed. The personal representative of the decedent sued defendant, who asserted that, under ORS 471.565(2), he was not liable because he had not "served or provided" alcohol to the shooter "while" the shooter was "visibly intoxicated." The trial court agreed and granted summary judgment in favor of defendant. The Court of Appeals reversed, holding that, under ORS 471.545(2), a social host "serve[s] or provide[s]" alcohol when the host controls the alcohol supply, and in this case the evidence permits an inference that defendant did that at a time when the shooter was visibly intoxicated. *Baker v. Croslin*, 264 Or App 196, 330 P3d 698 (2014). On review, we agree with the Court of Appeals and affirm.

Because the trial court granted summary judgment for defendant, we state the facts in the light most favorable to plaintiff. ORCP 47 C. Defendant hosted a party at his home to watch a basketball game and play cards. Among those attending the party were three friends, Johnson, Baker, and Smith; Smith arrived at around 7:30 p.m. Five or six others also attended the party, coming and going over the course of the evening.

Both Baker and Smith had permits to carry concealed handguns, and both of them brought handguns to the party.

Defendant had alcohol in his home, including a bottle of vodka in his freezer and a bottle of rum and other hard liquor under his bar. Defendant also had purchased a bottle of Cockspur rum. Baker later reimbursed him for that purchase. Baker's wife did not like her husband drinking hard alcohol. So he had asked defendant to purchase the rum. Meanwhile, Baker brought a 30-pack of beer, and Smith brought six 16-ounce bottles of Coors light beer.

There is no evidence that defendant personally served any of the guests any alcohol, at least in the sense that he did not personally pour anyone drinks. Rather, the guests understood that they were expected to help themselves. Smith did just that. He later recalled that he drank two of the light beers that he had brought to the party and two mixed drinks with vodka and Squirt soda.

Defendant placed several guns that he possessed on display for his guests on a table in the kitchen, including a handgun that he had recently purchased. At some point early in the evening, Smith and Baker also displayed their handguns. Defendant gave Smith some hollow-point bullets to replace the full-metal-jacket bullets then in Smith's weapon. Hollow-point bullets are designed to expand on impact and inflict significantly more damage than ordinary bullets. Smith loaded the hollow-point bullets.

Shortly before 9:00 p.m., defendant, Smith, Baker, and Johnson had a shot of hard liquor. The record is not entirely clear what that liquor was. Defendant later recalled that it was the Cockspur rum. Johnson testified only that it was rum. Smith later said that he could not recall if it had been "whiskey or rum or what." After the shots, Johnson left the party. Defendant, Smith, and Baker talked about the best options for carrying a concealed weapon. Shortly after 9:00 p.m., the three then began playacting self-defense scenarios for about 20 minutes.[1] Defendant became concerned about the combination of guns and alcohol and left to put his gun away in his bedroom. While defendant was out of the room, Smith and Baker continued to act out self-defense scenarios three or four more times. In the process, Smith drew his pistol and accidentally shot Baker through the chest, killing him.

Plaintiff, the personal representative of Baker's estate, initiated a civil action against Smith and defendant. Plaintiff alleged that defendant had been negligent in three ways:

---

[1] Each of the three pretended to be held up and then drew their weapons on each other from where they usually carried them—defendant, either in a side holster or in a left back pocket; Smith, in his left back pocket; and Baker, in the front waistband of his pants.

"1.   In [defendant] unreasonably serving Smith alcohol while Smith was in a visibly intoxicated state;

"2.   In [defendant] unreasonably encouraging quick draw handgun activity while Smith was in a visibly intoxicated state;

"3.   In [defendant] unreasonably encouraging Smith to load his unloaded handgun with Magtech hollow[-]point ammunition while Smith was in a visibly intoxicated state[.]"

Plaintiff ultimately settled with Smith. Meanwhile, defendant moved for summary judgment on the ground that ORS 471.565(2) shielded him from liability, because there was no evidence that he had personally served or provided Smith with alcohol while Smith was visibly intoxicated.

Plaintiff responded that there was, in fact, evidence that defendant had provided Smith alcohol while Smith was visibly intoxicated in that "Smith drank vodka from [defendant's] freezer, [defendant] had other alcohol, including rum, available below his bar, and [defendant] testified that his friends were welcome to help themselves to whatever he had." Plaintiff asserted that, although Smith recalled having only four or five drinks over the course of the evening, expert testimony would show that he had consumed much more, and that "some or all of the additional alcohol that he consumed was furnished by" defendant. Plaintiff pointed out that, in addition to the vodka that defendant had in the freezer, defendant had purchased the bottle of Cockspur rum and kept another bottle of rum below his bar. According to plaintiff, because defendant "supplied vodka and rum and made available other alcohol," summary judgment was not appropriate. Alternatively, plaintiff argued that defendant still was liable for encouraging gunplay and for giving Smith hollow-point ammunition while Smith had been drinking, regardless of whether defendant had provided any of the alcohol.

In reply, defendant contended that plaintiff's assertions were inadequate to avoid summary judgment under ORS 471.565(2), because, even assuming that defendant provided all the alcohol, "plaintiff cannot present evidence

that Smith was visibly intoxicated" when he drank that alcohol.

At the hearing on the summary judgment motion, plaintiff asserted an additional theory of liability, namely, premises liability. As to defendant's motion, she reiterated that her expert would testify that Smith was visibly intoxicated after the fourth drink. That meant, she argued, that he was visibly intoxicated when he had a final shot of hard liquor. Because the hard liquor had been supplied by defendant, she concluded, she met the conditions for imposing liability required by ORS 471.565(2).

In response, defendant agreed that "when Smith had that last shot of rum, there's evidence that he was visibly intoxicated." The key to the defense, he explained, was that the last shot was rum and, more specifically, the Cockspur rum that Baker had paid for. There was no evidence that defendant had "served or provided" the final shot to Smith, he argued, because that final shot was Baker's rum, not defendant's.

In reply, plaintiff argued first that there was an issue of fact about whether the final shot was the Cockspur rum. Plaintiff pointed out that defendant had made available his own rum, and that Smith's recollection that the final shot might have been rum did not specify the source of that rum. In any event, plaintiff argued, Smith recalled that the final shot might have been whiskey as well, which would have come from defendant's supply. And finally, plaintiff argued that, even assuming that the final shot was the Cockspur rum, the undisputed fact was that defendant had purchased it and brought it to the party.

The trial court granted the summary judgment motion. The court first concluded that, if defendant met the conditions for the safe harbor from liability found in ORS 471.565(2), then the allegations of negligence as to the gunplay and the provision of hollow-point ammunition also would be barred, because both of those additional negligence specifications were predicated on Smith's intoxication. The trial court explained that the dispositive issue, then, was whether there was evidence that defendant "served or provided" the final shot to Smith. The court reasoned that the last drink

could have been either whiskey or the Cockspur rum that defendant had purchased for Baker. As to the former possibility, the trial court concluded that there was simply no evidence that the last drink was, in fact, whiskey or that any whiskey that he drank was defendant's. As to the latter possibility, the court concluded that defendant had not "served or provided" the rum because, having been reimbursed for his purchase, the rum was at that point actually Baker's. The court did not address plaintiff's argument that, at all events, defendant is liable under a theory of premises liability.

Plaintiff appealed, arguing that, among other things, the trial court concluded incorrectly that ORS 471.565(2) barred liability. She argued that the evidence, properly viewed, permits a reasonable trier of fact to find that defendant had "served or provided" Smith alcohol when Smith was visibly intoxicated. Alternatively, plaintiff argued that, even if ORS 471.565(2) barred her claim against defendant for serving Smith while visibly intoxicated, it did not bar her claims that defendant had been negligent in other ways—that is, for giving Smith hollow-point ammunition or for encouraging gunplay while Smith was visibly intoxicated. In addition, plaintiff asserted that defendant was liable under a theory of premises liability, regardless of the applicability of ORS 471.565(2).

Defendant renewed his assertion that there was no evidence that he had "served or provided" alcohol to Smith when Smith was visibly intoxicated, as there was no evidence either that defendant personally served Smith any alcohol or that any of the alcohol that Smith imbibed while visibly intoxicated was alcohol that defendant had provided. Defendant argued that the only alcohol that he actually made available to his guests was the vodka in the freezer. The rest of the alcohol had been either brought by the guests or, in the case of the Cockspur, eventually paid for by a guest. According to defendant, a social host cannot be held liable for injuries that result from a guest consuming alcohol provided by someone else.

The Court of Appeals agreed with plaintiff and reversed. The court construed the phrase "served or provided," as it is used in ORS 471.565(2), to turn on whether

the social host has "control" over the "alcohol that was supplied to the visibly intoxicated person." *Baker*, 264 Or App at 199. Relying on this court's decisions in *Solberg v. Johnson*, 306 Or 484, 760 P2d 867 (1988), and *Wiener v. Gamma Phi, ATO Frat.*, 258 Or 632, 485 P2d 18 (1971), the court explained that,

> "the key factor in assessing whether a particular defendant should be considered to have provided alcohol to a visibly-intoxicated person so as to support the imposition of liability is the 'amount of control' that the defendant had over the alcohol that was supplied to the visibly-intoxicated person. *** Where a defendant has no control over the supply of alcohol, the defendant cannot be liable for permitting a person to become dangerously intoxicated from that supply. By contrast, if a defendant has control over the alcohol supply from which the visibly-intoxicated guest consumes alcohol, the defendant has 'served or provided' the guest with alcohol."

*Baker*, 264 Or App at 199-200 (citations omitted). Turning to the record on summary judgment, the court first addressed whether there was evidence sufficient to permit a finding that Smith was visibly intoxicated. The court noted that plaintiff had retained an expert who was willing to testify that, at the time that Smith took his final drink, shortly before the shooting, he would have been visibly intoxicated. *Id.* at 200-01. The court concluded that that evidence "would permit a reasonable factfinder to find that Smith was exhibiting signs of visible intoxication *** when he consumed his final drink." *Id.* at 201.

The court then addressed whether the record contained evidence sufficient to permit a finding "that defendant had control over the alcohol supply from which Smith consumed that final drink." *Id.* Answering in the affirmative, the court relied on evidence that defendant hosted the party at his house and that the Cockspur was available for others to drink. *Id.* at 201-02. Because the court concluded that ORS 471.565(2) did not bar defendant's liability, it did not need to reach plaintiff's alternative arguments that, even if that statute protected defendant from liability for overservice, it did not bar the other negligence claims for giving Smith hollow-point ammunition or encouraging gunplay.

On review, defendant contends that the Court of Appeals erred in equating "served or provided" alcohol, under ORS 471.565(2), with having some sort of abstract "control" over the availability of drinks based on the host having made alcohol available. Defendant insists that "served or provided" means to directly, personally serve or provide alcohol to a guest while that guest is visibly intoxicated.

Plaintiff does not contest that defendant did not personally pour any of Smith's drinks. Thus, she concedes, he did not "serve" Smith. Plaintiff nevertheless argues that defendant did indirectly "provide" Smith alcohol within the meaning of the statute by making hard alcohol available to him. According to plaintiff, expert testimony established that Smith would have become visibly intoxicated after his fourth drink. Thus, she argues, by the time that defendant, Johnson, Baker, and Smith had their final shot of whiskey or rum, Smith was visibly intoxicated, and defendant failed to take steps to "cut [him] off." In plaintiff's view, defendant controlled the alcohol supply and failed to exercise that control at a time when he saw that Smith was visibly intoxicated.

In the alternative, plaintiff asks the court to address the issues that the Court of Appeals did not, namely, the trial court's conclusion that ORS 471.565(2) bars her claims for negligently supplying the hollow-point bullets and encouraging gunplay while Smith was visibly intoxicated. She also renews her contention—not addressed by either the trial court or the Court of Appeals—that, regardless of whether ORS 471.565(2) applies, defendant still may be liable under a theory of premises liability.

Because the appeal comes to us by way of a summary judgment, we must consider whether the pleadings and evidence, construed in the light most favorable to plaintiff, shows that there is no genuine issue of material fact and that defendant is entitled to judgment as a matter of law. ORCP 47 C. Answering that question, however, requires that we first establish the statutory standard against which the evidence must be evaluated. That standard is supplied by ORS 471.565(2), which provides:

"(2)   A person licensed by the Oregon Liquor Control Commission, person holding a permit issued by the commission or social host is not liable for damages caused by intoxicated patrons or guests unless the plaintiff proves by clear and convincing evidence that:

"(a)   The licensee, permittee or social host served or provided alcoholic beverages to the patron or guest while the patron or guest was visibly intoxicated ***."

The statute thus provides a safe harbor to social hosts against liability for damages caused by intoxicated patrons or guests unless the plaintiff meets the requirements of the statute. The requirements relevant to this appeal are two: That the social host (1) "served or provided" alcohol to a patron or guest (2) "while the patron or guest was visibly intoxicated." We take each of those requirements in turn.

The first requirement is that the social host have "served or provided" alcohol to patrons or guests. The terms are not statutorily defined. In such cases, we assume, in the absence of evidence to the contrary, that the legislature intended them to be given their ordinary meanings. *State v. Dickerson*, 356 Or 822, 829, 345 P3d 447 (2015) ("When the legislature does not provide a definition of a statutory term, we ordinarily look to the plain meaning of the statute's text to determine what particular terms mean."). Dictionaries are a common source of possible ordinary meanings. *State v. Gonzalez-Valenzuela*, 358 Or 451, 461, 365 P3d 116 (2015) ("[T]his court frequently attempts to resolve disputes about plain meaning by consulting dictionary definitions of the relevant terms."). And the actual usage of the terms, in context, determines which of any listed definitional possibilities is the one that applies. *State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011).

As used in ORS 471.565(2), the word "served" is a transitive verb, so the following definitions appear most relevant:

"**6 a :** to wait on (one) at table **b :** to bring (food) to a diner—often used with *up* <*served* him up a hearty dinner> **c :** to place food on (the table) *** **7 a :** to furnish or supply (one) with something needed or desired <a consolidated school *served* the children who had attended the several former

one-room schools> **b :** to wait on (a customer) in a store **c :** to provide merchandise serviceable or desirable to (a buyer)[.]"

*Webster's Third New Int'l Dictionary* 2075 (unabridged ed 2002); *see also American Heritage Dictionary of the English Language* 1601 (5th ed 2011) ("[t]o prepare and offer (food, for example) *** [t]o place food before (someone); wait on"). The word "provided" likewise is used as a transitive verb, so the relevant definitions are:

"**2 a :** to fit out or fit up **:** EQUIP—used with *with <provided* the children with the books they needed> <~ the car with a radio> **b :** to supply for use **:** AFFORD, YIELD <olives ... ~ an important item of food –W. B. Fisher> <the preface ... ~s a hint –L.R. McColvin>[.]"

*Webster's* at 1827; *see also American Heritage* at 1418 ("[t]o make available (something needed or desired) *** [t]o supply something needed or desired to"). *Webster's* adds that the term "provide" is synonymous with "supply" and "furnish." *Webster's* at 1827.

On the surface, there appears to be quite a bit of possible overlap between the two words. "Serve" means to "furnish," "supply," or "provide" something, while "provide" is synonymous with "furnish" or "supply." Ordinarily, when the legislature expresses itself in terms of alternatives— "A or B"—we assume that the alternatives do not mean the same things. *Crystal Communications, Inc. v. Dept. of Rev.*, 353 Or 300, 311, 297 P3d 1256 (2013) ("As a general rule, we construe a statute in a manner that gives effect, if possible, to all its provisions."); *Blachana, LLC v. Bureau of Labor and Industries*, 354 Or 676, 692, 318 P3d 735 (2014) ("[R]edundancy *** is a consequence that this court must avoid if possible."). That is, of course, unless there is evidence that that is precisely what the legislature intended. *Thomas Creek Lumber and Log Co. v. Dept. of Rev.*, 344 Or 131, 138, 178 P3d 217 (2008) ("nothing prohibits the legislature from saying the same thing twice.").

In this case, we are aware of no such evidence that the legislature intended "served" and "provided" to mean essentially the same things. And, from the examples listed, it appears that, while "served" tends to connote a more direct,

personal action—actually pouring a drink, for example—
"provided" can be taken to include more general and less
direct action. We can see no reason, for example, why the
term would not apply to situations in which a social host
purchases alcohol and makes it available for guests, who
may help themselves.

That is consistent with this court's prior decisions
on social-host liability, in which this court concluded that
such liability turns not just on whether the host personally
pours drinks but also on the extent to which the social host
less directly exercises, or fails to exercise, control over the
supply of alcohol to guests. In *Wiener*, for example, a minor
became intoxicated at a fraternity party. After leaving the
party, the minor drove home and was involved in an accident
that injured the plaintiff. The plaintiff brought common-law
negligence claims against, among others, Kienow, a member
of the fraternity who had purchased the alcohol that was
provided at the party. This court, affirming the trial court's
dismissal of the complaint against Kienow, commented that

> "[o]rdinarily, a host who makes available intoxicating
> liquors to an adult guest is not liable for injuries to third
> persons resulting from the guest's intoxication. There
> might be circumstances in which the host would have a
> duty to deny his guest further access to alcohol. This would
> be the case where the host has reason to know that he is
> dealing with persons whose characteristics make it espe-
> cially likely that they will do unreasonable things. Such
> persons could include those already severely intoxicated,
> or those whose behavior the host knows to be unusually
> affected by alcohol."

258 Or at 639 (internal quotation marks and footnotes
omitted).

Under *Wiener*, then, there may be circumstances
under which a social host may be liable for injuries resulting
from a guest's intoxication because the social host, although
not directly serving alcohol to guests, nevertheless made
alcohol available to guests. Indeed, if the social host has
made alcohol available to guests, and the host knows that
a guest already has become intoxicated, the host may have
an obligation "to deny his [or her] guest further access to
alcohol." *Id*. In other words, to the extent that the social host

controls the supply of alcohol, he or she may be liable for the way that control is exercised.

The court adopted that reasoning in *Solberg*, in determining whether a social host "served or provided" alcohol within the meaning of the predecessor to ORS 471.565(2).[2] In that case, a stepfather took his stepson to a tavern for drinks. He bought drinks even after his stepson had become visibly intoxicated. The stepson drove home intoxicated and caused an accident, injuring the plaintiff. The plaintiff sued the tavern, and the tavern in turn sought contribution from the stepfather, both for a violation of the statute itself and for common-law negligence. The trial court dismissed the tavern's third-party contribution action for failure to state a claim, and this court reversed. *Solberg*, 306 Or at 487-88.

Addressing the applicability of what is now ORS 471.565(2), the court cited *Wiener* in concluding that the term "social host" applies to "one who has control of choosing who will be served." 306 Or at 489-90. A stepfather buying drinks for his stepson, the court said, "sufficiently serves and controls the furnishing of the drinks to constitute a social host" within the meaning of the statute. *Id*. at 490. Thus, whether one is a "social host" within the meaning of the statute depends on whether the person has "control of choosing who will be served." And liability for having "served or provided" a guest turns on how that control is exercised.

The court emphasized that point in turning to the question of the stepfather's common-law liability in negligence. The court explained that, because the tavern had alleged that the stepfather knew that his stepson had become visibly intoxicated, the stepfather had "direct control" over the stepson's access to alcohol. That, the court explained, distinguished the case from *Weiner*:

"In contrast [to *Wiener*], in the present case, [the tavern] alleged that [the stepfather] '*served and provided*' alcoholic beverages to [the stepson], who '[the stepfather] knew or should have known *** had a serious drinking

_____

[2] We have since disavowed *Solberg* to the extent that it could be read to have recognized a statutory tort consisting of elements different from a common-law negligence action. [Deckard v. Bunch](), 358 Or 754, 789 n 20, ___ P3d ___ (2016).

problem.' In this allegation [the tavern] paralleled this court's description of a person 'whose characteristics make it especially likely that they will do unreasonable things.' *Wiener*, 258 Or at 639. *Wiener* held that 'there may be circumstances under which a person could be held liable for allowing another to become dangerously intoxicated.' *Id.* at 640. The distinguishing circumstance is the amount of control. In *Wiener* there was no control. In the present case it is alleged that there was direct control. The decision as to the amount of actual control rests with the trier of fact, not the court."

*Solberg*, 306 Or at 492 (emphasis and omission in original).[3]

We turn to the second statutory requirement, that the social host have served or provided a patron or guest "while the patron or guest was visibly intoxicated." That phrasing suggests a temporal sequence of events. It is not sufficient that a social host or guest merely have served or provided alcohol to patrons or guests; rather, the social host must be shown to have done so *while*—that is, during a time when—the patron or guest was visibly intoxicated. That much necessarily follows from the ordinary meaning of the word "while," which, when used as a conjunction, means:

"**1 a :** during the time that <instructed and encouraged the boy ~ he made an almost incredible . . . record of precocity

---

[3] Although it does not directly inform our interpretation of ORS 471.565(2), we note in passing that our construction of that statute appears to be consistent with the way that most other courts have construed similar statutes, concluding that whether a host "serves" or "provides" or "furnishes" alcohol to guests turns on the manner in which the host exercises control over the supply of alcohol to the guests. *See, e.g.*, *Forrest v. Lorrigan*, 833 P2d 873, 875 (Colo App 1992) (statutory liability for "sale, service, or provision" of alcohol to intoxicated persons turns on whether host "has control over or takes an active part in supplying" alcohol); *Vanderhoek v. Willy*, 728 NE2d 213, 216-18 (Ind App 2000) (whether social host "furnished" alcohol within the meaning of Indiana Dram Shop Act depends on extent of "control" over alcohol supply); *Juliano v. Simpson*, 461 Mass 527, 536, 962 NE2d 175, 183 (2012) (social host liability requires "actual or constructive alcohol service or effective control of the alcohol supply"); *Delfino v. Griffo*, 150 NM 97, 257 P3d 917 (2011) (it is "the degree of control" by the host over the alcohol supply that determines liability under state Liquor Liability Act); *Kellogg v. Ohler*, 825 P2d 1346, 1348 (Okla 1992) (citing *Solberg*, concluding that defendants were not liable as social hosts, because they "had absolutely no control over the alcohol served"); *Knight v. Rower*, 170 Vt 96, 101, 742 A2d 1237, 1241 (1999) ("furnishing" alcohol within the meaning of state Dram Shop Act "connotes possession or control of the alcoholic beverage by the furnisher" (internal quotation marks and citation omitted)).

–Alexander Cowie> <were killed ~ attempting a burglary –A.F. Haslow> **b :** until the end of the time that **:** as long as <~ there's life there's hope> **c :** during which time **:** and during the same time **:** and meanwhile <hurried to get ready ~ the others just sat>[.]"

*Webster's* at 2604; *see also American Heritage* at 1973 ("[a]s long as; during the time that").

ORS 471.565(2) does not explicitly identify precisely *to whom* the patron or guest must be visibly intoxicated. But, in context, we think it is sufficiently clear that the focus is whether the patron or guest is visibly intoxicated *to the social host*. The very point of the statute is that, at a time when the social host is confronted with a visibly intoxicated guest, the social host has a decision to make—namely, whether, in light of that information, to serve or provide the visibly intoxicated patron or guest with additional alcohol.

The legislative history is sparse on that particular point. But the little that exists fully supports what we have said the text of the statute appears to state.

The relevant phrasing first appeared in a 1979 bill, HB 3152. *See* Or Laws 1979, ch 801, §§ 1, 2.[4] As originally proposed, the bill would have required not only that

---

[4] The 1979 legislation was codified in two separate statutes, *former* ORS 30.950 and *former* ORS 30.955. Both of those statutes applied if a person had been "served or provided" alcohol when that person was "visibly intoxicated." *Former* ORS 30.950, which applied only to a "licensee or permittee," originally provided:

"No licensee or permittee is liable for damages incurred or caused by intoxicated patrons off the licensee's or permittee's business premises unless the licensee or permittee has served or provided the patron alcoholic beverages when such patron was visibly intoxicated."

*See* Or Laws 1979, ch 801, § 1. Similarly, *former* ORS 30.955 applied to a "private host," and stated:

"No private host is liable for damages incurred or caused by an intoxicated social guest unless the private host has served or provided alcoholic beverages to a social guest when such guest was visibly intoxicated."

*See* Or Laws 1979, ch 801, § 2.

The 1987 legislature later merged those two statutes into *former* ORS 30.950, at that time substituting the term "social host" for the original "private host." *See* Or Laws 1987, ch 774, §§ 13, 14 (amending *former* ORS 30.950 to add "social host," and repealing *former* ORS 30.955). That statute was amended several times again in ways not pertinent here before being renumbered as ORS 471.565 in 2001.

the licensee or social host had "served or provided" a visibly intoxicated person, but also that the provider had been grossly negligent in doing so. Dave Dietz appeared as a witness on behalf of Restaurants of Oregon in support of the bill and stated:

> "The reason for that, for the standard of visibly intoxicated, that is in the law now, we recognize that that is a subjective standard. It is difficult very often to determine when a person is visibly intoxicated. \*\*\* But at least it provides a standard that our operators can understand to some extent. They then have the *ability to make the choice* as to whether or not an individual is visibly intoxicated. If they step over the bounds, and *serve someone that either by a witness's own viewing of that person or by a waitress or waiter's own viewing of that person is visibly intoxicated*, then the owner or manager of that establishment should be liable, and they should understand when and where that liability begins to exist."

Tape Recording, House Committee on Judiciary, HB 3152, June 11, 1979, Tape 85, Side 2 (statement of Dave Dietz) (emphases added). Later, Chairman Frohnmayer asked Dietz to explain when a provider would have been negligent but not grossly negligent:

> Chairman Frohnmayer: "\*\*\* A licensee—a person who is injured later—you've established the person is visibly intoxicated. That means, knocked down, fall down, or whatever. But that means visible, words slurred, whatever, something to prove that—you're going to have to prove something. But then you go on and say that the serving or providing in light of those factors has to have been gross negligence. Now, what conduct is negligent but not grossly negligent? \*\*\*

> Dave Dietz: "In those circumstances, I think you almost have to conclude, if the bartender, for example, *knew the person to be visibly intoxicated at the time the person or patron requested a drink*, I think that that almost equates to gross negligence. \*\*\* Any indices of what is in fact some visible intoxication is going to then lead you to believe that *if the bartender served that patron and did so without pursuing the patron's status*, to any degree, then you have gross negligence."

*Id.* (emphases added).

The upshot of those excerpts from the legislative history is clear: If the patron or guest is not visibly intoxicated to the social host, then the social host may serve or provide alcohol without fear of liability. But, if the patron or guest is visibly intoxicated to the social host, and the social host nevertheless serves or provides alcohol, then the social host may face liability.

The question then arises whether the social host must be subjectively aware of the guest's intoxicated status. The wording of the statute makes clear that the test is an objective one. ORS 471.565(2) requires proof that a patron or guest is "visibly" intoxicated. Ordinarily, the adverb "visibly" means "in a visible manner," and the word "visible," in turn, means "capable of being seen **:** perceptible by vision \*\*\* easily seen \*\*\* CONSPICUOUS." *Webster's* at 2557; *see also American Heritage* at 1936 ("[p]ossible to see; perceptible to the eye \*\*\* [o]bvious to the eye"). The point of the statute, then, is whether the patron or guest is in such a state that his or her intoxication may be said to be conspicuous to, or readily observable by, the social host, whether or not the host has the subjective belief that the patron or guest in fact is intoxicated.

In that regard, however, it is important to note that nothing in the wording of ORS 471.565(2) suggests that a social host is under an obligation to continuously monitor all patrons or guests to determine whether they become intoxicated. The statute refers only to the consequences of a social host serving or providing alcohol to a patron or guest who already has become visibly intoxicated. On the other hand, if a patron or guest is visibly intoxicated to the social host, the wording of the statute seems to suggest that it may become necessary for the host to prevent the guest from taking further drinks. As we have noted, the statutory reference to "provid[ing]" alcohol to guests is broad enough to encompass purchasing the alcohol and making it available to guests. It would seem to follow, then, that once a social host becomes aware that a guest has become visibly intoxicated, the host is not entitled to the protections of the statute to the extent that he or she continues to make alcohol available to that visibly intoxicated guest.

This court's decisions in *Wiener* and *Solberg* are not to the contrary. As we have noted, in the former decision, the court suggested that "[t]here might be circumstances" in which the host could have a duty to deny a guest further access to alcohol. 258 Or at 639. But the existence of that duty would depend on whether "the host has reason to know" that, for example, the guest is "already severely intoxicated." Thus, even under *Weiner*, the liability of a host turns on the social host's knowledge that a guest "already" has become intoxicated, not on some duty to monitor guests as a result of being the supplier of the alcohol. *Solberg* likewise emphasized that the key to the stepfather's liability was the fact that he was already aware of his stepson's intoxicated state when he continued to buy him drinks. 306 Or at 491.

With the foregoing principles in mind, we turn to the record in this case to determine whether plaintiff submitted evidence that creates a genuine issue of material fact about whether defendant "served or provided" alcohol to Smith "while" Smith was "visibly intoxicated." As we have noted, plaintiff has retained an expert who will testify that Smith was visibly intoxicated after consuming his fourth drink. Thus, Smith would have been visibly intoxicated at the time that he, along with defendant, Johnson, and Baker took a final shot. It can be reasonably inferred that, defendant being there, he would have seen that Smith was visibly intoxicated at the time that he took that last shot. And it is undisputed that defendant took no steps to stop Smith from taking that last shot, even though Smith was visibly intoxicated to him.

Defendant's sole argument is that, because Smith's last shot was of the Cockspur rum, and because Baker had reimbursed him for the cost of that rum, the rum was Baker's and not defendant's. Because the Cockspur rum belonged to Baker, defendant argues, he did not "serve or provide" it to Smith.

We find defendant's argument unpersuasive. At the outset, it bears emphasis that the question whether defendant exercised the sort of control over the alcohol supply that he could be said to have "served or provided" alcohol to Smith while Smith was visibly intoxicated is one of fact. As the court explained in *Solberg*, "[t]he decision as to the

amount of actual control rests with the trier of fact, not the court." 306 Or at 492. In that regard, defendant's argument that, as a matter of law, he cannot be said to have "served or provided" Baker's Cockspur rum to Smith is problematic for at least two reasons.

First, the argument assumes that, in fact, the last shot of rum was the Cockspur rum. Although that certainly is what defendant said that he recalled, Smith testified that the last shot could have been rum—without saying whether it was the Cockspur rum or the rum that defendant had in his cabinet—or whiskey; he could not remember which. Johnson likewise testified that he recalled the shot was rum, but did not state whether it was the Cockspur. If the last shot was whiskey, there is evidence from which it could be inferred that it was defendant's. Defendant testified that he had a supply of hard liquor, and there is no testimony that anyone else brought anything but beer to the party.

Second, even if the last shot was Cockspur rum, the evidence that Baker paid defendant for it at some point during the party does not necessary establish, as a matter of law, that defendant did not "serve or provide" it. There is evidence that defendant purchased it for the party at his house and that it was available for others to consume at the party. If a social host were to purchase a supply of various types of alcohol for a party and then make that alcohol available to the guests, the fact that the host leaves a jar into which guests can contribute for the costs of the alcohol does not necessarily mean that, as a matter of law, the host did not still control the supply of alcohol to the guests. At the least, on the record before us, there is a genuine issue of material fact about the extent to which defendant controlled the supply of alcohol to his party, including the hard liquor that was the last shot that he and his friends consumed before the accident. Accordingly, the Court of Appeals correctly concluded that the trial court erred in granting defendant's motion for summary judgment as to the safe-harbor provision of ORS 471.565(2).

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.