Argued and submitted February 25, affirmed October 21, 2020,
petition for review allowed March 4, 2021 (367 Or 668)
See later issue Oregon Reports

In the Matter of the Compensation of
Carl S. Ward, Claimant.

SAIF CORPORATION
and Robert S. Murray,
*Petitioners,*

*v.*

Carl S. WARD,
*Respondent.*

Workers' Compensation Board
1703591; A171025

477 P3d 429

Petitioners seek judicial review of a final order of the Workers' Compensation Board in which the board concluded that claimant, a driver for a for-hire carrier, was a subject worker of that carrier under the Workers' Compensation Act, ORS chapter 656. Petitioners argue on appeal that ORS 656.027(15), which provides an exemption from the requirement that employers provide workers' compensation coverage, applies when a for-hire carrier leases equipment to a driver for the sole purpose of furnishing, maintaining, and operating that equipment in the service of the carrier. *Held*: ORS 656.027(15) requires an ownership or leasehold interest that is separate from and in addition to the furnishing, maintaining, and operating of the equipment. Thus, the interest must be, at minimum, an interest that would allow the lessee sufficient authority over the equipment to possess and use that equipment in some way other than furnishing, maintaining, and operating it in service of the lessor. The lease agreement in this case did not convey such an interest. Accordingly, the board did not err when it found that claimant was a subject worker.

Affirmed.

David L. Runner argued the cause for petitioners. On the briefs was Julie Masters.

Craig T. Miller argued the cause and filed the brief for respondent.

Before Lagesen, Presiding Judge, and Powers, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

This workers' compensation case presents the question of whether a truck driver (claimant) who sustained injuries while driving a truck that he leased from a trucking company for the sole purpose of driving for that company is a "subject worker" such that the company must provide workers' compensation insurance coverage for his injuries. Petitioners, SAIF Corporation (SAIF) and Robert S. Murray, the owner of Bob Murray Trucking (BMT), a for-hire carrier, seek review of a final order by the Workers' Compensation Board in which the board concluded that claimant, a driver for BMT, was a subject worker of BMT under the Workers' Compensation Act, ORS chapter 656. For the reasons described below, we affirm the board's order.

We review the board's order pursuant to ORS 656.298(7)[1] and ORS 183.482(8).[2] *Akins v. SAIF*, 286 Or App 70, 71, 398 P3d 463, *rev den*, 362 Or 94 (2017). Accordingly, we review the board's order for legal error, and we state the facts in accordance with the board's factual findings, which adopted the earlier findings of an administrative law judge (ALJ) and are not disputed.

Claimant worked as a truck driver for BMT between May and August 2016. BMT is a for-hire carrier in the business of hauling wood, steel, and general commodities.

---

[1] ORS 656.298(7) provides, "The review [of an order of the Workers' Compensation Board] by the Court of Appeals shall be on the entire record forwarded by the board. Review shall be as provided in ORS 183.482(7) and (8)." In relevant part, ORS 183.482(7) provides that the "[r]eview of a contested case shall be confined to the record, and the court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion."

[2] ORS 183.482(8) provides, in relevant part:

"(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, the court shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"* * * * *

"(c) The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

In order to begin driving for BMT, claimant leased a trac-tor truck from BMT and signed an "Operator Lease/Independent Contractor Agreement" that allowed claimant to drive the truck solely for BMT. The agreement provided that claimant "has not acquired, nor will [he] acquire by this acceptance of the Lease Agreement, any proprietary right, security interests or equity in the lease vehicle." Under the agreement, lease payments, occupational insurance fees, and maintenance fees were deducted from claimant's pay-checks.[3] Claimant was compensated at a rate of 37 cents per mile. Claimant also signed an acknowledgment of receipt of a BMT "Driver's Manual," which included safety rules, rules of personal conduct and dress, and restrictions, includ-ing a prohibition on carrying passengers without BMT's permission.

BMT required that claimant drive prescribed routes and monitored his progress, inquiring with him if he devi-ated from his route or made an unscheduled stop at a rest stop. BMT paid for, among others, the following expenses for the truck: liability insurance; fuel; and equipment, includ-ing a radio, tools, flashlight, camera, and fire extinguisher. BMT placed its logo on the truck to "identify the equipment as being in [BMT's] service" and prohibited claimant from placing his own signage on it. For the duration of the lease, claimant was entitled to use the vehicle "only in interstate trucking in the United States on behalf of [BMT] * * *." BMT also reserved the right to "disqualify any driver provided by [claimant] who is determined to be unsafe by [BMT] in [BMT]'s sole discretion."

Claimant suffered severe injuries while hauling a load when he had braking difficulties that caused his truck to flip over. SAIF denied his claim for injuries, relying on ORS 656.027(15), which provides that a claimant "who has an ownership or leasehold interest in equipment and who furnishes, maintains and operates [it]" is not a sub-ject worker. SAIF concluded that, because claimant had a leasehold interest in the truck and furnished, maintained,

---

[3] The lease payments and insurance fees were required under the agree-ment; the maintenance fees were part of BMT's incentivized in-house service plan.

and operated it, he was not a subject worker under the statute. An ALJ agreed with SAIF's contention and upheld the denial. The Worker's Compensation Board reversed, determining that claimant was not able to "furnish" his truck to BMT because he did not have a transferable interest in it, and claimant was therefore a subject worker under ORS 656.027(15).

On judicial review, the parties present competing arguments about what ORS 656.027(15) means. The legislature's intended meaning of ORS 656.027(15) and whether claimant is a subject worker of BMT is an issue of statutory construction. In resolving that question, we consider the text, context, and any helpful legislative history of the statute, keeping in mind that "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (internal quotation marks and citations omitted).

Generally, "all workers" are subject workers unless an exemption applies. ORS 656.027. The exemption contained in ORS 656.027(15) has two requirements: (1) the worker must have "an ownership or leasehold interest in equipment," and (2) the worker must "furnish[], maintain[], and operate[]" that equipment. The statute's conjunctive structure suggests that those two requirements are separate and independent from each other—that is, that the ownership or leasehold interest in the equipment must be in some way distinct from the furnishing, maintaining, and operating of that equipment. *See Crystal Communications, Inc. v. Dept. of Rev.*, 353 Or 300, 311, 297 P3d 1256 (2013) ("As a general rule, we construe a statute in a manner that gives effect, if possible, to all its provisions."); *Blachana, LLC v. Bureau of Labor and Industries*, 354 Or 676, 692, 318 P3d 735 (2014) ("[R]edundancy, of course, is a consequence that this court must avoid if possible.").

Thus, the resolution of this case requires us to determine the meaning of each of the requirements of ORS 656.027(15), keeping in mind that they mean different things. Because there is no dispute that claimant "operates" and "maintains" the truck, the critical terms are "leasehold

interest"[4] and "furnish." In order to be a nonsubject worker, claimant must both "furnish" the truck and have a "leasehold interest."

The parties here provide competing interpretations of those requirements. Both parties focus their arguments on the meaning of the term "furnish." Claimant contends that "furnish" means that a driver must have a transferable interest in the equipment in order to furnish it. Petitioners, in turn, argue that "the equipment is furnished when it is made available to haul the loads dispatched by the carrier, and no transferable interest is required." As explained below, the definition of furnish, by itself, does not resolve the inquiry, but rather must be construed in conjunction with the "leasehold interest."

Although "furnish" is not defined in Oregon chapter 656, there is no indication in the applicable or surrounding provisions that the legislature intended that term to have any meaning other than its ordinary one. "Furnish" is used in ORS 656.027(15) as a transitive verb, so the most relevant definition is "to provide or supply with what is needed, useful, or desirable: EQUIP[.]" *Webster's Third New Int'l Dictionary* 923 (unabridged ed 2002); *see State v. Glushko*, 351 Or 297, 311, 266 P3d 50 (2011) ("[W]hen consulting dictionaries for the ordinary meanings of statutory terms, it is important to examine the definition of the part of speech actually used in the statute at issue."). According to the plain meaning of the term, then, a driver "furnishes" equipment for the purposes of ORS 656.027(15) by providing or supplying that equipment to a for-hire carrier. There is no dispute that the driver here provides or supplies equipment to BMT (the truck that BMT already supplied to him) for purposes of hauling loads. However, our inquiry does not end there.

The term "leasehold interest" is also not defined generally in chapter 656. *See* ORS 656.005. Because "leasehold interest" is a term of art in secured transactions, we look to the specialized meaning it has in the relevant field. *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014) (We determine the meaning of a term of art

---

[4] There is no contention that claimant has an "ownership interest" in the truck he leased from BMT.

that is drawn from a specialized field "based on how [the term is] used and understood in the specialized field, trade, or profession, and using sources that best accord with the legislature's intent."). We have previously considered where to look to define terms relating to leasing of trucks. In *Delta Logistics, Inc. v. Employment Dept. Tax Section*, 279 Or App 498, 507, 379 P3d 783 (2016), *aff'd*, 361 Or 821, 401 P3d 779 (2017), we were tasked with determining the meaning of "lease" in the context of a for-hire carrier's contention that it was not the "employer" of its owner-operator truck drivers for the purposes of unemployment insurance taxes under ORS 657.047, another statute that did not provide a specific definition. The Employment Department argued that ORS 72A.1020 and ORS 72A.1030(1)[5] direct us to use the Uniform Commercial Code (UCC) definition of "lease" for any transaction that creates a lease unless "context requires otherwise." The carrier argued that context did in fact require otherwise, because federal and state regulations specific to the trucking industry contained their own definitions. Ultimately, we concluded that it did not matter which definition we used, because the definitions were consistent with one another. *Id*. at 508.

The UCC definition provides that a "leasehold interest" is "the interest of the lessor or the lessee under a lease contract," and a "lease" is "a transfer of the right to possession and use of goods for a term in return for consideration." ORS 72A.1030(1)(j), (m). Trucking-industry-specific regulations provide that a leasehold interest confers upon the lessee "the right to exclusive possession, use, and control of the leased vehicle." *Delta Logistics, Inc.*, 279 Or App at 508 (internal quotation marks omitted). As was the case in *Delta Logistics, Inc.*, any difference between those definitions is

---

[5] ORS 72A.1020 provides: "This chapter applies to any transaction, regardless of form, that creates a lease."

ORS 72A.1030(1)(j) provides:

"As used in this chapter, unless the context otherwise requires:

"*****

"'Lease' means a transfer of the right to possession and use of goods for a term in return for consideration, but a sale, including a sale on approval or a sale or return, or retention or creation of a security interest is not a lease. Unless the context clearly indicates otherwise, 'lease' includes a sublease."

immaterial here. Under either definition, a leasehold interest, at a minimum, means that the claimant must have the "right to possession and use."[6]

So, under the plain meaning of the statutory text, a driver can "furnish" equipment to a carrier by providing the equipment in service of the carrier—here, by producing the equipment to haul loads for the carrier. A driver can have a "leasehold interest" in the equipment if the driver has the right to possess and use it. However, if the leasehold interest conveys no right of possession, use, and control beyond allowing the driver to furnish, maintain, and operate the equipment in service of the carrier, the lease is no more than a paper trail to give form to what is in substance actually the use of company equipment by a subject employee. Accordingly, we conclude that the exemption under ORS 656.027(15) requires a leasehold interest that exceeds the right to furnish the equipment to the carrier such that the driver has a right to possess, use, and control the equipment for purposes other than providing it to the carrier.

Read the way that petitioners suggest, the statutory requirement that a driver "furnish" the equipment would be subsumed into the "leasehold interest." Petitioners contend that "leasehold interest" means that claimant has the right to use the truck and "furnish" means that claimant can supply the truck to BMT for the purpose of hauling goods. However, the lease here creates an interest so limited that it allows claimant *only* to furnish the truck to BMT and does not allow any other use. That interpretation is not in line

---

[6] The legislature did provide a specific definition of "leasehold interest" with respect to another exemption from subject worker status, ORS 656.027(28), which creates an exemption for taxicab and nonemergency medical transport drivers. However, that provision provides definitions of "lease" and "leasehold" that are particular to the way those terms are "used in [that] subsection." Specifically, that subsection defines a "lease" as "a contract under which the lessor provides a vehicle to a lessee for consideration," and a "'leasehold' includes, but is not limited to, a lease for a shift or a longer period." ORS 656.027(28)(a), (b). The legislative history indicates that those definitions were included in that subsection because the "stakeholders wanted to make some clarifications" about the "unique contractual relationships" between cab companies and "owner-drivers of taxicabs." Audio Recording, House Committee on Business and Labor, SB 688, May 30, 2007, at 1:17:48 (comments of Theresa Van Winkle, Committee Administrator, and Chris Davie, SAIF Corporation), https://olis.leg.state.or.us (accessed Aug 25, 2020).

with either the conjunctive nature of the statute itself—the person must have an ownership or leasehold interest in *and* furnish the equipment—or our general rule of construction that, unless there is evidence of legislative intent to the contrary, we give effect to every provision of a statute. When, as here, the right to possession and control conferred by the lease is solely the right to use the equipment in service of the carrier, the leasehold interest is not sufficiently separate to meet the language of the exemption under ORS 656.027(15).

The legislative history further clarifies that the legislature intended the leasehold interest to exceed that of merely being able to furnish the equipment. A committee summary of the bill enacting the exemption describes its effect as adding "[e]quipment owner/operators (who own and operate equipment for hire)" to the category of nonsubject workers. Testimony, House Committee on Labor, HB 2820, May 30, 1977, Ex A (statement of Rep Bill Markham). The original exemption added to the category of nonsubject workers "[a] person who engages in transportation by motor vehicles of logs, poles and piling and who both furnishes and maintains the vehicle used in such transportation." (Then ORS 656.027(11)). That original wording of the exemption indicates that the legislature contemplated the exemption to apply to an arrangement in which drivers arrive with their own equipment and furnish that equipment to transport goods for a for-hire carrier.

The exemption was later amended to expand the types of applicable vehicles. At a hearing in the House Committee on Labor discussing a potential expansion to backhoes and other similar equipment, Jack Kalinoski, representing the Association of General Contractors, testified:

> "The Senate * * * felt it was appropriate to include those relatively few people who own equipment that is used for that kind of work so that if they contract out their services with their equipment, owning, maintaining, and operating their equipment, no one would construe them to be employe[e]s of the person with whom they have contracted."

Tape Recording, House Committee on Labor, HB 2726, July 2, 1979, Tape 40, Side 1. When asked if the inclusion of that equipment "might open the door for construction

companies to lease a backhoe to an employe[e], Mr. Kalinoski replied that he "did not feel this would happen but if it did his association would be the first to say the statute was being abused." Here, BMT is leasing its truck to claimant in order to qualify for an exemption meant for drivers who bring their own trucks. That is indistinguishable from the "abuse" of the statute identified in the legislative hearing.

Our conclusion in this case is consistent with our analysis of a similarly worded provision in chapter 657, addressing whether an employment relationship exists subjecting employers to unemployment insurance coverage. That statute exempts from "employment" a situation where a person "(1) leases their equipment to a for-hire carrier; (2) performs transportation services for that for-hire carrier; and (3) personally operates, furnishes and maintains the equipment." *3P Delivery, Inc. v. Employment Dept. Tax Section*, 254 Or App 180, 183, 295 P3d 83 (2012) (citing ORS 657.047(1)(b)).[7]

In *3P Delivery, Inc.*, we analyzed a similar effort by the for-hire carrier to escape the responsibilities of an employment relationship. There, the for-hire carrier leased its trucks to drivers who then leased those same trucks back to the for-hire carrier to satisfy that exemption's requirement that a driver "lease" their own equipment to the carrier. We concluded that that deal between the driver and the for-hire carrier did not meet the requirements for exemption from employment under ORS 657.047 because, given the "interrelationship of the [independent contractor agreement, lease agreement, and for-hire carrier's practices], it is evident that the lease/lease-back arrangement provides a paper trail of transactions designed to fulfill the requirement for exemption under ORS 657.047, without a practical basis in fact." 254 Or App at 189. Despite being "called

---

[7] ORS 657.047 provides, in relevant part, that

"(1) As used in this chapter, 'employment' does not include:

"* * * * *

"(b) Transportation performed by motor vehicle for a for-hire carrier by any person that leases their equipment to a for-hire carrier and that personally operates, furnishes and maintains the equipment and provides service thereto."

a 'lease,'" the arrangement did not "create[] an interest in the vehicle that the driver could lease back to the vehicle's owner." *Id*. The relationship between the drivers and the for-hire carriers gave the drivers no authority over the vehicles "other than the authority to drive the vehicles for [the for-hire carrier] while the drivers were in compliance with the [independent contractor agreement]." *Id*. Thus, the drivers had no interest that would allow them to lease back or "furnish" the vehicle to the for-hire carrier. *Id*.; *see also May Trucking Co. v. Employment Dept.*, 279 Or App 530, 539, 379 P3d 602 (2016), *rev den*, 364 Or 680 (2019) (concluding that a lease that did not give the driver any transferable interest in the equipment and prohibited the driver from using the leased equipment in service of any other carrier did not create the requisite interest to comply with ORS 657.047(1)(b)).[8]

　　Like the "lease" in *3P Delivery, Inc.*, the lease agreement here is too limited to convey an interest sufficient to meet the requirements of the statutory exemption. Although the agreement in this case states that claimant "shall have exclusive possession, control and use of the equipment for the duration of" the lease, that statement is belied by the practical considerations of the many restrictions that BMT placed on claimant's use of the vehicle, including prescribing routes, requiring that claimant make the vehicle available for inspections and follow BMT's maintenance directives, and requiring claimant to place signage on the vehicle identifying it as being in BMT's service. Indeed, the lease agreement explicitly required claimant "to use the leased vehicle only in interstate trucking in the United States on behalf of [BMT] ***." Similarly, the Driver's Manual outlined several additional restrictions, such as safety rules, personal conduct rules, vehicle cleanliness standards, and prohibitions against carrying passengers without permission. Taken as a whole, despite being called a "lease," the agreement between claimant and BMT did not confer any interest in the leased vehicle beyond the authority to use it

---

[8] Petitioners correctly note that the "furnishing" described in *3P Delivery, Inc.*, leasing the truck back to the carrier, is different from the "furnishing" at issue here, supplying the truck for use. However, the question in both cases is the same: whether the lease agreement conveyed a sufficient interest to allow the type of furnishing required by the applicable statute, and we find the reasoning of *3P Delivery, Inc.* instructive.

in BMT's service and under BMT's direction: the only right of use and possession conferred by the lease was the right to furnish the equipment to BMT.

It is clear from the legislative history and the conjunctive nature of the statute—applying to "[a] person who has an ownership or leasehold interest in equipment *and* who furnishes, maintains and operates the equipment" (emphasis added)—that the statute requires an ownership or leasehold interest that is separate from and in addition to the furnishing, maintaining, and operating of the equipment. The interest described in ORS 656.027(15) must be, at minimum, an interest that would allow the lessee sufficient authority over the equipment to possess and use that equipment in some way other than furnishing, maintaining, and operating it in service of the lessor. Here, the lease agreement between BMT and claimant did not convey such an interest. Accordingly, the board did not err when it found that claimant was a subject worker.[9]

Affirmed.

_____

[9] Petitioners also contend that the board erred by "characterizing the lease between claimant and [BMT] as 'leased and leased-back.'" In response, claimant argues that, even if the board erred in that characterization, "the issue of whether claimant leased his truck *back* to the employer is not determinative in this case." We agree with claimant that the issue of whether the lease is a one-way agreement or a lease-and-lease-back agreement is not dispositive. Because we conclude that the board correctly determined that the relationship between claimant and BMT did not satisfy the requirements of the exemption under ORS 656.027(15), even when considered as a one-way lease agreement, we do not further address petitioners' second assignment of error.